## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**JEFFERSON PARISH FIREFIGHTERS ASSOCIATION**

**CIVIL ACTION**

**VERSUS**

**NO. 24-2139**

**LOUISIANA BOARD OF ETHICS, ET AL.**

**SECTION: D(2)**

## ORDER AND REASONS

Before the Court are two Motions: the first is a Motion for Preliminary Injunction filed by Plaintiff Jefferson Parish Firefighters Association, Local 1374 (the "Union"),[1] and the second is a Consolidated Motion to Dismiss and Motion to Stay Under *Pullman* Abstention filed by Defendants the Louisiana Board of Ethics (the "Ethics Board") and LaKoshia R. Roberts, Jose I. Lavastida, Anne P. Banos, Camille R. Bryant, Paul Harvey Colomb, Sarah S. Couvillon, Mark A. Ellis, William D. Grimley, Jacqueline A. Scott, and Alfred W. Speer, all in their official and respective capacities as members of the Ethics Board (the "Board Members") (collectively, "Defendants").[2]  After careful consideration of the parties' memoranda, the record, and the applicable law, the Court **GRANTS in part** and **DENIES in part** Defendants' Consolidated Motion to Dismiss and Motion to Stay Under *Pullman* Abstention and **GRANTS** the Union's Motion for Preliminary Injunction.

---

[1] R. Doc. 4.
[2] R. Doc. 22.

## I.     FACTUAL AND PROCEDURAL BACKGROUND

The Louisiana Civil Service Law requires that municipalities, parishes, and fire protection districts establish a Civil Service Board, which is responsible for addressing issues among firefighters, emergency responders, and law enforcement and their employers.[3]  One member of the Civil Service Board must "be elected and appointed from the fire department."[4]  In 2017, Craig Burkett ("Mr. Burkett") was elected to serve on the Civil Service Board.[5]  Mr. Burkett is also the Vice President of the Union.[6]  The Union is a labor organization for firefighters which collects dues from its members and has historically paid for its members' legal representation in proceedings before the Civil Service Board.[7]

In 2018, the Civil Service Board inquired to the Ethics Board whether Mr. Burkett, due to his status as an officer of the Union,—a position for which he receives a salary—has a duty to recuse himself from matters that the Union brings before the Civil Service Board.[8]  On July 23, 2018, the Ethics Board issued an advisory opinion outlining scenarios in which Mr. Burkett would and would not be required to recuse himself.[9]  Relevant to this lawsuit, the Ethics Board issued its Advisory Opinion (the "2018 Advisory Opinion") that:

> [The] Code of Governmental Ethics prohibits the Union from representing its members before the Board while Mr. Burkett serves as Vice-President of the Union and as a member of the Board.  La. R.S. 42:1111E prohibits a public servant or a legal entity of which such public servant is an officer, director,

---

[3] R. Doc. 1 at ¶¶ 4, 23 (citing LA. R.S. § 33:2536(A)).
[4] *Id.* (quoting LA. R.S. § 33:2536(C)(3)(a)(i)).
[5] *Id.* at ¶ 26.
[6] *Id.* at ¶ 25.
[7] *Id.* at ¶ 4.
[8] *Id.* at ¶ 27.
[9] R. Doc. 1–2.

trustee, partner, or employee from receiving any thing of economic value for assisting a person in a transaction with the agency of the public servant . . . . Because the Union receives payment of dues, in part, for its representation of its members before the Board, the Union is prohibited from representing its members before the Board while Mr. Burkett serves as Vice-President.[10]

In December 2019, the Ethics Board informed the Union that the Ethics Board was conducting a confidential investigation into whether the Union had violated Louisiana Revised Statute 42:1111(E) by assisting its members in matters before the Civil Service Board while Mr. Burkett served as a member of the Civil Service Board and as an officer of the Union.[11]  On June 9, 2020, the Union filed a Petition for Declaratory Judgment, Temporary Restraining Order, Preliminary Injunction, and Permanent Injunction against the Ethics Board in the 19th Judicial District Court for the Parish of East Baton Rouge, State of Louisiana, alleging that the Ethics Board violated the United States and Louisiana Constitutions through its investigation into a matter that is constitutionally protected and statutorily required.[12]  The Union requested that the state court enjoin the Ethics Board from continuing its investigation, filing charges, or taking enforcement action against the Union and that it declare that the Union is not prohibited by the Ethics Code from providing a legal defense for its members in hearings before the Civil Service Board while a member of the Union sits on the Civil Service Board.[13]  On August 1, 2022, the Union filed a

---

[10] *Id.*

[11] R. Doc. 1–4.  Many of the facts relevant to the Union in the state court litigation also pertain to Mr. Burkett.  However, because Mr. Burkett is not a party to this lawsuit, the Court limits its recitation of the factual background to the Union except in cases where facts pertaining to Mr. Burkett are relevant.

[12] R. Doc. 1–6 at 12.

[13] *Id.* at ¶¶ 49, 73.

motion for summary judgment, which was denied.[14]  The Union appealed, and the appeal was denied on March 8, 2023.[15]  The Union contends that the state court case remains pending.[16]

On May 22, 2023, approximately two months after the denial of its appeal in the state court matter, the Union filed a new application for a declaratory opinion with the Ethics Board concerning whether the Union could pay for legal services for its members appearing before the Civil Service Board while a Union officer holds a seat on the Civil Service Board.[17]  On March 8, 2024, the Ethics Board issued its Declaratory Opinion (the "2024 Declaratory Opinion") finding that the Union is prohibited from paying attorneys to represent members while a Union trustee or officer is a member of the Civil Service Board.[18]  The Union appealed the 2024 Declaratory Opinion to Louisiana's First Circuit Court of Appeal on April 10, 2024, and that appeal remains pending.[19]  Mr. Burkett was renominated to the Civil Service Board in May 2024.[20]

On August 29, 2024, the Union filed this lawsuit in this Court, arguing that Defendants' conduct constitutes a violation of the Union's rights pursuant to the First and Fourteenth Amendments to the United States Constitution.[21]  Specifically, the

---

[14] R. Doc. 1–8 at ¶ 10.

[15] *Id.*

[16] R. Doc. 1 at ¶ 45.

[17] *See* R. Doc. 1–1 at 1–2.

[18] *Id.* at 8.

[19] R. Doc. 22–6.  Louisiana law allows an order by the Board of Ethics to be appealed to Louisiana's First Circuit Court of Appeal.  LA. R.S. § 42:1142.

[20] R. Doc. 1–8 at ¶ 3.  Prior to hearing the parties' arguments at the March 7, 2025 oral argument in this matter, the Court outlined its understanding of the factual background of this case, and neither party voiced any substantive objections to the Court's recitation of the facts.

[21] R. Doc. 1 at ¶ 54.  The Union also raises a claim for "Injunctive Relief."  *Id.* at ¶ 61.  But as Defendants point out, injunctive relief is not an independent claim.

Union argues that the 2024 Declaratory Opinion strips the Union "of its constitutional right to provide an attorney for its members' representation."[22]  The following day, the Union filed a Motion for Preliminary Injunction seeking to enjoin the 2024 Declaratory Opinion.[23]  During the briefing for the Motion for Preliminary Injunction, Defendants filed a Consolidated Motion to Dismiss and Motion to Stay Under *Pullman* Abstention.[24]  On March 7, 2025, the Court held oral argument as to both Motions.[25]

The parties' positions in favor of and in opposition to dismissal, abstention, and injunctive relief are intertwined in the briefing of the respective Motions.  For the sake of clarity, the Court outlines the parties' arguments by the relief they seek rather than by the briefing and/or Motions in which the arguments were raised.  Because the Court's analysis must begin with Defendants' bases for dismissal, particularly dismissal based on jurisdictional grounds, the Court outlines the arguments pertaining to Defendants' Motion to Dismiss first.

## A. Arguments Pertaining to Defendants' Motion to Dismiss

Defendants argue that the Union's claim is barred by Eleventh Amendment immunity.[26]  Alternatively, Defendants argue that the Union's claim should be dismissed—or at least stayed—under the *Younger* and/or *Pullman* abstention doctrines due to the ongoing state court litigation.[27]  Finally, Defendants argue that

---

[22] *Id.* at ¶¶ 52–53.
[23] R. Doc. 4.
[24] R. Doc. 22.
[25] R. Doc. 37.
[26] R. Doc. 22–1 at 11.
[27] *Id.* at 11–14.

the Union's claim should be dismissed on the merits because the Union has not stated a viable First Amendment claim. Although Defendants appear to acknowledge that the Union has a right to pay for the legal representation of its members, Defendants argue that the State's compelling interest in maintaining high standards of legal ethics outweighs the Union's constitutional right to associate and, thus, to the extent the 2024 Declaratory Opinion infringes upon the Union's constitutional rights, it does not do so impermissibly.[28]

The Union rejects each cited basis for dismissal, arguing first that Defendants' Eleventh Amendment immunity argument fails based on the *Ex parte Young* doctrine.[29] The Union argues that this exception to Eleventh Amendment immunity applies because the Union seeks injunctive relief against government officials for violations of federal law.[30] The Union further argues that neither abstention doctrine relied upon by Defendants applies in this case. The *Younger* abstention doctrine, the Union argues, applies to only three categories of cases and this case does not fall within any of those categories.[31] The Union further argues that the *Pullman* abstention doctrine is inapplicable because that doctrine requires the interpretation of a state law. There is no state law at issue in this case, according to the Union; the challenge is solely to the 2024 Declaratory Opinion.[32] The Union further argues that even if it was challenging the state law, *Pullman* applies only to ambiguous

---

[28] *Id.* at 15–16.
[29] R. Doc. 25 at 9–13.
[30] *Id.* at 12–13.
[31] *Id.* at 14.
[32] *Id.* at 17–21.

statutes.[33]  Finally, the Union argues that Defendants' Motion to Dismiss must be denied as procedurally improper and, alternatively, it must fail on the merits because the Supreme Court has held that a state's interest in regulating ethical conduct does not justify infringement of a union's First Amendment right to hire an attorney for its members.[34]

In their reply, Defendants reject the Union's assertion that *Young* applies to its claim, first as to all Defendants because the Union seeks retroactive relief instead of prospective relief.[35]  Defendants further argue that *Young* has no application against the Ethics Board, which is a state agency and not a state official.[36]  As to the abstention doctrines, Defendants argue that *Younger* applies here because this case involves a civil enforcement proceeding akin to a criminal prosecution, which is one of the limited categories of cases eligible for *Younger* abstention.[37]  Defendants argue that *Pullman* abstention is likewise applicable because the 2024 Declaratory Opinion interpreted and applied Section 1111(E) and the First Circuit's resolution of the pending appeal has the potential to moot this case.[38] Defendants reject the Union's argument that their Motion to Dismiss is procedurally improper and note that a motion to dismiss may be granted "on the basis of a dispositive issue of law."[39]  They then go on to restate their arguments as to the merits of the Union's claim.[40]

---

[33] *Id.*
[34] *Id.* at 23–28.
[35] R. Doc. 27 at 5.
[36] *Id.*
[37] *Id.* at 6.
[38] *Id.* at 7–8.
[39] *Id.* at 8 (internal quotations, citation, and emphasis omitted).
[40] *Id.* at 9–10.

**B. Arguments Pertaining to the Union's Request for Injunctive Relief**

In support of its request for injunctive relief, the Union argues that the 2024 Declaratory Opinion runs afoul of the Union's First Amendment right to associate.[41] The Union argues that while states may have an interest in regulating professional ethical conduct such as conflicts of interest, the Supreme Court has rejected the idea that such an interest is compelling enough to infringe upon a union's right to hire legal counsel for its members.[42]  The Union asserts that it has been irreparably harmed because it has been prohibited from providing representation to its members since the Ethics Board issued its 2024 Declaratory Opinion.[43]  The Union further argues that the equities weigh in favor of an injunction because the public is not harmed by firefighters receiving legal representation, nor is it harmed by an injunction issued for the purpose of ensuring that the Union's constitutional rights are protected.[44]

Defendants insist that the Union has failed to meet any of the elements required for injunctive relief.  Defendants argue that for the same reasons that the Union allegedly fails to state a claim, it is not likely to succeed on the merits of its First Amendment right to associate claim.[45]  Defendants further argue that since

---

[41] R. Doc. 4.

[42] R. Doc. 4–1 at 5.

[43] *Id.* at 6 (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)).  Although it is not entirely clear from the briefing, the Union clarified at oral argument that in 2024, a member whose legal representation would have been paid for by the Union absent the Opinion appeared before the Civil Service Board. Counsel for the Union also represented that a second member whose legal representation would have been paid for by the Union if it were not for the Opinion was scheduled to appear before the Civil Service Board on March 11, 2025.

[44] *Id.* at 7.

[45] R. Doc. 23 at 10–20.

there is no constitutional violation, there is no irreparable injury.[46]    Finally, Defendants argue that it is within the public's interest to uphold Louisiana's Governmental Code of Ethics, which protects against conflicts of interest on the part of public employees.[47]    This, Defendants argue, combined with the injury the State would suffer by not being able to enforce its laws, far outweighs the Union's "desire to reinstate the unethical financial relationship between the union official and the Civil Service Board."[48]

In its reply, the Union reargues its position as to the first two prongs of the preliminary injunction analysis.[49]    It then rejects Defendants' position that it will be injured by an injunction, arguing that "there is no perception of a conflict of interest where, as here, the Ethics Board itself found the Union 'did not have a substantial economic interest in disciplinary matters pending before the Civil Service Board.'"[50] The Union further argues that Defendants have not pointed to any credible harm which would outweigh the harm to the Union if the 2024 Declaratory Opinion remained in effect.[51]    Finally, the Union argues that Defendants conflate Defendants' interest with the public's interest and insists that "[t]he public interest, which is certainly different from Defendants' interest, is not served by allowing an unconstitutional state action to take effect."[52]

---

[46] *Id.* at 20–21.
[47] *Id.* at 21.
[48] *Id.* at 23.
[49] R. Doc. 26 at 6–9.
[50] *Id.* at 9 (quoting R. Doc. 1–1 at 7).
[51] *Id.* at 10.
[52] *Id.* (internal citation and quotations omitted) (cleaned up).

## II.    LEGAL STANDARD

### A. Motion to Dismiss Pursuant to Rule 12(b)(1)

A party's invocation of Eleventh Amendment immunity is analyzed as a challenge to the federal court's exercise of federal subject matter jurisdiction.[53]  "A case is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case."[54]  The party seeking to invoke jurisdiction bears the burden of demonstrating its existence.[55]  "A court can find that subject matter jurisdiction is lacking based on (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts."[56]  "[T]here is a presumption against subject matter jurisdiction that must be rebutted by the party bringing an action to federal court."[57]

### B. Motion to Dismiss Pursuant to Rule 12(b)(6)

Under Federal Rule of Civil Procedure 12(b)(6), a defendant can seek dismissal of a complaint, or any part of it, for failure to state a claim upon which relief may be granted.[58]  To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible

---

[53] *Mahogany v. La. State Sup. Ct.*, 262 F. App'x 636, 2008 WL 217764, at *1 (5th Cir. Jan. 25, 2008) (citations omitted); *Carver v. Atwood*, 18 F.4th 494, 497 (5th Cir. 2021) ("Sovereign immunity is indeed a jurisdictional bar.").

[54] *Home Builders Ass'n of Miss., Inc., v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998) (quoting *Nowak v. Ironworkers Local 6 Pension Fund*, 81 F.3d 1182, 1187 (2d Cir. 1996)).

[55] *See Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001).

[56] *Enable Miss. River Transmission, LLC v. Nadel & Gussman*, 844 F.3d 495, 497 (5th Cir. 2016) (internal citation and quotations omitted).

[57] *Coury v. Prot*, 85 F.3d 244, 248 (5th Cir. 1996) (citation omitted).

[58] FED. R. CIV. P. 12(b)(6).

on its face.'"[59]  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[60]  But, no matter the factual content, a claim is not plausible if it rests on a legal theory that is not cognizable.[61]  In ruling on a motion to dismiss, the Court accepts all well-pleaded facts as true and views those facts in the light most favorable to the non-moving party.[62]  The Court, however, is not bound to accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions.[63]  "Dismissal is appropriate when the complaint on its face shows a bar to relief."[64]

In deciding a Rule 12(b)(6) motion to dismiss, a court is generally prohibited from considering information outside the pleadings but may consider documents outside of the complaint when they are: (1) attached to the motion; (2) referenced in the complaint; and (3) central to the plaintiff's claims.[65]  A court can also consider matters of public record and matters subject to judicial notice.[66]

### C. Motion for Preliminary Injunction

Federal Rule of Civil Procedure 65(a) governs the issuance of preliminary injunctions.  To obtain a preliminary injunction, a movant must establish: (1) a

---

[59] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

[60] *Gentilello v. Rege*, 627 F.3d 540, 544 (5th Cir. 2010) (quoting *Iqbal*, 556 U.S. at 678) (internal quotations omitted).

[61] *Shandon Yinguang Chem. Indus. Joint Stock Co., Ltd. v. Potter*, 607 F.3d 1029, 1032 (5th Cir. 2010).

[62] *Midwest Feeders, Inc. v. Bank of Franklin*, 886 F.3d 507, 513 (5th Cir. 2018).

[63] *Plotkin v. IP Axess Inc.*, 407 F.3d 690, 696 (5th Cir. 2005).

[64] *Cutrer v. McMillan*, 308 F. App'x 819, 820 (5th Cir. 2009) (internal quotation marks omitted).

[65] *Maloney Gaming Mgmt., LLC v. St. Tammany Par.*, 456 F. App'x 336, 340–41 (5th Cir. 2011).

[66] *Servicios Azucareros de Venez., C.A. v. John Deere Thibodaux, Inc.*, No. 10–CV–4443, 2013 WL 1513406, at *3 (E.D. La. Apr. 11, 2013).

substantial likelihood of success on the merits; (2) a substantial threat of irreparable injury if the injunction is not issued; (3) that the threatened injury if the injunction is denied outweighs any harm that will result if the injunction is granted; and (4) that the grant of an injunction will not disserve the public interest.[67] The third and fourth factors "merge when the Government is the opposing party."[68] "A preliminary injunction is an extraordinary remedy and should only be granted if the plaintiffs have clearly carried the burden of persuasion on all . . . requirements."[69]

## III.    ANALYSIS

### A. Whether this Matter Is Barred by Sovereign Immunity

Defendants' initial argument in favor of dismissal is that Eleventh Amendment immunity bars the Court from exercising subject matter jurisdiction over this matter.[70]  In response, the Union argues that this case involves a request for prospective relief against government officials for violations of federal law and therefore falls within the *Ex parte Young* exception to Eleventh Amendment immunity.

The Eleventh Amendment to the United States Constitution "generally deprives federal courts of jurisdiction to hear 'suits by individuals against

---

[67] *Janvey v. Alguire*, 647 F.3d 585, 595 (5th Cir. 2011); *Nichols v. Alcatel USA, Inc.*, 532 F.3d 364, 372 (5th Cir. 2008).
[68] *Nken v. Holder*, 556 U.S. 418, 435 (2009).
[69] *Planned Parenthood of Hous. & S.E. Tex. v. Sanchez*, 403 F.3d 324, 329 (5th Cir. 2005) (quoting *Karaha Bodas Co., LLC v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara*, 335 F.3d 357, 363 (5th Cir. 2003)) (internal quotation marks omitted).
[70] R. Doc. 22–1 at 13.

nonconsenting states' and suits 'against state officials in their official capacities.'"[71]
"Importantly, however, sovereign immunity is not boundless."[72]  Relevant to this
case, sovereign immunity cannot be enjoyed if the *Ex parte Young* doctrine applies.[73]
The *Young* doctrine affords a federal court jurisdiction over a matter "against a 'state
official in his official capacity if the suit seeks prospective relief to redress an ongoing
violation of federal law.'"[74]  Thus, for *Young* to apply, "(1) A plaintiff must name
individual state officials as defendants in their official capacities; (2) the plaintiff
must allege an ongoing violation of federal law; and (3) the relief sought must be
properly characterized as prospective."[75]  To determine the applicability of *Young*, a
court must "conduct a simple, 'straightforward inquiry'" without considering "the
merits of the underlying claims."[76]

Defendants argue first that *Young* is inapplicable because the Union seeks
retroactive relief, as opposed to prospective relief.  The Court disagrees.  The Union
opposes what it argues is an ongoing violation of its First and Fourteenth Amendment
rights.  Specifically, the Union seeks relief from the 2024 Declaratory Opinion issued
and presently enforced by the Ethics Board.  Defendants' position that the Union
seeks retrospective relief is admittedly premised entirely on language in the

---

[71] *Planned Parenthood Gulf Coast, Inc. v. Phillips*, 24 F.4th 442, 450 (5th Cir. 2022) (citing *McCarthy ex rel. Travis v. Hawkins*, 381 F.3d 407, 412 (5th Cir. 2004) (Garza, J., concurring in part and dissenting in part)).
[72] *Id.*
[73] *Id.* (citing *Frew ex rel. Frew v. Hawkins*, 540 U.S. 431, 437 (2004)).  While Eleventh Amendment immunity may also be waived by the State or abrogated by Congress, neither of these exceptions are relevant in this case.  *See Sullivan v. Univ. of Tex. Health Sci. Ctr. at Hous. Dental Branch*, 217 F. App'x 391, 2007 WL 519744, at *4 (5th Cir. Feb. 13, 2007).
[74] *Phillips*, 24 F.4th at 450 (quoting *Williams ex rel. J.E. v. Reeves*, 954 F.3d 729, 736 (5th Cir. 2020)).
[75] *Green Valley Special Util. Dist. v. City of Schertz, Tex.*, 969 F.3d 460, 471 (5th Cir. 2020) (internal quotations and citation omitted) (cleaned up).
[76] *Id.* (internal quotations and citations omitted).

Complaint that the Court "[d]eclar[e] that Defendants unlawfully **violated** the Union's rights and privileges secured by the First and Fourteenth Amendments to the United States Constitution."[77]  But the Board Members' focus on the tense used by the Union in its Complaint misses the mark.  In determining whether relief sought is truly prospective, courts looks to the substance of the request and not the label.[78]  While the Union may have used past tense phrasing, the crux of its request is that the Court prevent the Board Members from enforcing the allegedly unconstitutional 2024 Declaratory Opinion.  This is precisely the scenario under which application of *Young* applies.  The Union seeks prospective relief, and thus, the Union's claim is not barred by sovereign immunity on this basis.

Defendants further argue that even if the Union seeks prospective relief, *Young* has no application against the Ethics Board because the Union's claim against the Ethics Board, as opposed to the individual Board Members, is brought against a state agency and not government officials.[79]  In response, the Union cites to *Fund for Louisiana's Future v. Louisiana Board of Ethics*,[80] a 2014 decision in which another Section of this Court found that a plaintiff's claims against the Louisiana Ethics Board were not barred by sovereign immunity, as well as Fifth Circuit precedent permitting actions to proceed against state agencies under *Young*.[81]

---

[77] R. Doc. 1 at 13.
[78] *See Papasan v. Allain*, 478 U.S. 265, 280 (1986) (internal citation omitted).
[79] R. Doc. 25 at 10.
[80] No. 14–CV–0368, 2014 WL 1514234 (E.D. La. Apr. 16, 2014).
[81] *Id.* at 10-11.

The Court turns first to *Fund for Louisiana's Future*, in which Judge Feldman rejected an argument that the Louisiana Board of Ethics is entitled to sovereign immunity.[82]  Although the Union argues that this decision conclusively establishes that its claim against the Ethics Board may proceed under *Young*, a closer reading of the case reveals no analysis as to whether the Ethics Board was subject to *Young* even though it is a state agency.  Instead, in that case, the Ethics Board argued that it did not have the ability or willingness to enforce the statute that plaintiff sought to enjoin, and it was on this basis alone that Judge Feldman found that the Ethics Board's argument that *Young* did not apply to it "border[ed] on frivolous."[83]

Nor does the Court read current Fifth Circuit case law to allow for suits against state agencies.  Indeed, in recent years, the Fifth Circuit has repeatedly declined to apply *Young* to states or their agencies.[84]  Further, these decisions are not, as the Union suggested during oral argument, confined to cases involving a plaintiff's prayer for monetary damages.  For example, in *Moore v. Louisiana Board of Elementary and*

---

[82] 2014 WL 1514234.

[83] *Id.* at * 6; *see Morris v. Livingston*, 739 F.3d 740, 746 (5th Cir. 2014) (quoting *Okpalobi v. Foster*, 244 F.3d 405, 414–15 (5th Cir. 2001) ("[S]tate officers can be sued in federal court despite the Eleventh Amendment if the officers have some connection with the enforcement of the act in question or are specially charged with the duty to enforce the statute and are threatening to exercise that duty.") (internal quotations, brackets, and ellipses omitted).

[84] *Moore v. La. Bd. of Elementary & Secondary Educ.*, 743 F.3d 959, 963–64 (5th Cir. 2014) (quoting *P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 146 (1993)) ("The *Young* exception 'has no application in suits against the States and their agencies, which are barred regardless of the relief sought.'"); *City of Austin v. Paxton*, 943 F.3d 993, 1003 (finding that the district court erred in holding that the plaintiff's claims against the Texas Workforce Commission could proceed under *Ex parte Young* because the Texas Workforce Commission is a state agency and not an individual commissioner); *Doe v. Harrell*, 841 F. App'x 663, 668 (5th Cir. 2021) ("The Board [of Regents] itself is immune from all of Doe's claims: absent waiver or abrogation (neither of which are at issue here), only state officials—not state agencies—can be prospectively enjoined consistent with state sovereign immunity."); *Cozzo v. Tangipahoa Par. Council—President Gov.*, 279 F.3d 273, 280–81 (5th Cir. 2002) ("When a state agency is the named defendant, the Eleventh Amendment bars suits for both money damages and injunctive relief unless the state has waived its immunity.").

*Secondary Education*, the Fifth Circuit considered an appeal of an injunction prohibiting the Louisiana Board of Elementary and Secondary Education, the Louisiana Department of Education, and the Superintendent of Education from implementing two legislative acts.[85]  Ultimately, the Fifth Circuit found that the district court erred in allowing the plaintiff's claims to proceed against the agency defendants because those claims were barred by sovereign immunity.[86]  The Court acknowledged the *Young* exception but explained that because the defendants were agencies of the state rather than individual officers, *Young* did not apply.[87]

The Fifth Circuit reached an identical conclusion in *City of Austin v. Paxton*, a case involving the State's appeal of an injunction of a Texas housing statute.[88]  There, the Fifth Circuit held that "[t]he State is correct in its assertion that the [Texas Workforce] Commission is immune to suit and not subject to the *Young* exception."[89]  The Court explained that although *Young* provides for an exception to Eleventh Amendment immunity, "in order to fall within the *Ex parte Young* exception to sovereign immunity . . . a plaintiff must name individual state officials as defendants in their official capacities."[90]  Because "the City clearly named only the 'Texas Workforce Commission,' a state agency immune to suite, and did not name any individual commissioners," the City's suit was barred by sovereign immunity.[91]  The

---

[85] 743 F.3d at 961.
[86] *Id.* at 963–64.
[87] *Id.*
[88] 943 F.3d at 997–98.
[89] *Id.* at 1003.
[90] *Id.* at 1004 (internal quotations, citations, and brackets omitted).
[91] *Id.*

Court reaches the same result here.  The Ethics Board is a state agency,[92] and as such, is not subject to *Young*.  Accordingly, the Court dismisses without prejudice the Union's claim against the Ethics Board.  The Union's claim against the individual Board Members in their official capacities remains.[93]

## B. Whether the Court Should Abstain from Exercising Jurisdiction Over this Matter

The Board Members argue that even if the Court can exercise subject matter jurisdiction over them, it should abstain from doing so based on parallel state court litigation.  Specifically, the Board Members ask the Court to decline to consider this case based on *Younger* and/or *Pullman* abstention.  Before considering the specific requirements of these abstention doctrines, the Court notes that abstention, in any of its various forms, "is the exception, not the rule."[94]  A federal court's abstention from its proper exercise of jurisdiction "is an extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it," and "can be justified under this doctrine only in the exceptional circumstances where the order to the parties to repair to the State would clearly serve an important countervailing interest."[95]

---

[92] *Fund for La.'s Future*, 2014 WL 1514234, at *2.
[93] Defendants do not dispute, and the Court agrees, that the Union's claims against the individual Board Members are claims arising under federal law against government officials in their official capacities and therefore, all requirements under *Young* apply to the Union's claims against the Board Members.
[94] *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 14 (1983) (quoting *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 813 (1976)) (internal quotations omitted).
[95] *Id.* (quoting *Colo. River*, 424 U.S. at 813 (internal quotations omitted).

### i.    *Younger* Abstention Doctrine

The Board Members argue that "[t]his is a textbook *Younger* abstention case, making abstention mandatory."[96]  In support of their argument, the Board Members liken this case to *Middlesex County Ethics Committee v. Garden State Bar Association*, a case in which the Supreme Court upheld a finding of *Younger* abstention.[97]  The Board Members argue that the same result is warranted in this case because this case would interfere with the pending appeal at the Louisiana First Circuit Court of Appeal, Louisiana has an interest in regulating governmental ethics, and the Union could have raised its instant First Amendment claim in the First Circuit proceeding.[98]  They argue that the Union had the opportunity to raise its constitutional challenges during that state proceeding and that a Louisiana state court is the proper forum for those challenges because Louisiana has an important interest in regulating its governmental ethics.[99]

In response, the Union argues that *Younger* has no applicability to this case because the parallel state proceeding is not a criminal prosecution, civil enforcement proceedings, or civil proceeding concerning an order uniquely in furtherance of the state court's ability to perform its judicial functions.[100]  The Union likewise rejects the Board Members' likening of this case to *Middlesex* and argues that *Middlesex* was overruled by subsequent Supreme Court precedent.[101]

---

[96] R. Doc. 22–1 at 12.
[97] 457 U.S. 423 (1982).
[98] R. Doc. 22-1 at 12.
[99] *Id.* at 13.
[100] R. Doc. 25 at 14.
[101] *Id.* at 17.

The *Younger* doctrine allows a federal court to decline to exercise jurisdiction over lawsuits when "(1) the federal proceeding would interfere with an 'ongoing state judicial proceeding'; (2) the state has an important interest in regulating the subject matter of the claim; and (3) the plaintiff has 'an adequate opportunity in the state proceedings to raise constitutional challenges.'"[102]  When these three elements are met, "a federal court can assert jurisdiction only if 'certain narrowly delimited exceptions to the abstention doctrine apply.'"[103]  These exceptions include when:

> (1) the state court proceeding was brought in bad faith or with the purpose of harassing the federal plaintiff, (2) the state statute is "flagrantly and patently violative of express constitutional prohibitions in every clause, sentence, and paragraph, and in whatever manner and against whomever an effort might be made to apply it," or (3) application of the doctrine was waived.[104]

The Union relies on *Sprint Communications, Inc. v. Jacobs* to support its position that *Younger* does not apply.[105]  In that case, the Supreme Court clarified that "[o]nly exceptional circumstances . . . justify a federal court's refusal to decide a case in deference to the States."[106]  These exceptions apply only when the federal case relates to: (1) an ongoing state criminal prosecution; (2) civil enforcement proceedings; or (3) "civil proceedings involving certain orders . . . uniquely in furtherance of the state courts' ability to perform their judicial functions."[107]  The

---

[102] *Bice v. La. Pub. Def. Bd.*, 677 F.3d 712, 716 (5th Cir. 2012) (quoting *Middlesex*, 457 U.S. at 432).

[103] *Id.* (quoting *Tex. Ass'n of Bus. v. Earle*, 388 F.3d 515, 519 (5th Cir. 2004)) (footnote omitted).

[104] *Earle*, 388 F.3d at 519.

[105] R. Doc. 25 at 14–15.

[106] 571 U.S. 69, 78 (2013) (quoting *New Orleans Pub. Serv., Inc. v. Council of New Orleans*, 491 U.S. 350, 368 (1989)) (internal quotations and brackets omitted).

[107] *Id.* (internal quotations and citations omitted).

Supreme Court has "not applied *Younger* outside these three 'exceptional' categories" and has specifically held "that they define *Younger*'s scope."[108]

The Board Members do not argue that this case falls into the first or third category, arguing only that it constitutes a civil enforcement proceeding.  In support of its argument, the Board Members insist that this case is on all fours with *Middlesex*.[109]  *Middlesex* arose from an attorney-disciplinary proceeding against Lennox Hinds, a member of the New Jersey Bar, for making disparaging comments about a pending trial and the trial's presiding judge.[110]  Hinds's comments were brought to the attention of the Middlesex County Ethics Committee, which ultimately served a formal statement of charges on Hinds for violating the Disciplinary Rules of the Code of Professional Conduct.[111]  Instead of responding to the charges, Hinds filed suit in federal court, alleging that the disciplinary rules violated his First Amendment rights.[112]  The Supreme Court found that the district court properly abstained under *Younger* because: (1) the bar disciplinary proceedings constituted an ongoing state judicial proceeding; (2) the proceedings implicated important state interests; and (3) Hinds could have raised his constitutional concerns during the state proceedings.[113]

As an initial matter, the Court rejects the Union's position that *Sprint* overturned *Middlesex*.  In *Sprint*, the Supreme Court reversed the Eighth Circuit's

---

[108] *Id.*
[109] 457 U.S. at 427.
[110] *Id.* at 427–28.
[111] *Id.* at 428.
[112] *Id.* at 429.
[113] *Id.* at 432–36.

decision applying *Younger* to a federal court proceeding relating to a ruling by the Iowa Utilities Board.[114]  The Court noted that the Eighth Circuit erred in applying *Younger* solely based on the three factors enumerated in *Middlesex* because the three *Middlesex* factors "were not dispositive; they were, instead, additional factors appropriately considered by the federal court before invoking *Younger*."[115]  The *Sprint* Court went on to clarify that *Middlesex* was a *Younger* applicant because it involved a proceeding "akin to a criminal proceeding."[116]

Nevertheless, the Court does not agree with the Board Members that this case demands the same result as *Middlesex*.  The Supreme Court has generally limited its application of *Younger* to instances of civil enforcement "'akin to a criminal prosecution in 'important respects.'"[117]   *Middlesex* clearly fit this bill.  There, a complaint was made against an attorney, an investigation ensued, the governing body decided to take action against the attorney, and critically, the proceedings were initiated by the Middlesex County Ethics Committee.[118]   Here, the parallel proceeding with which the Board Members argue this case will run "roughshod into" is the First Circuit appeal of the 2024 Declaratory Opinion.[119]  This appeal, unlike the disciplinary proceeding in *Middlesex*, was initiated by the *Union's* request for an opinion from the Ethics Board and subsequent appeal of the 2024 Declaratory Opinion.  The First Circuit appeal does not have the potential to result in a punitive

---

[114] *Id.* at 69.
[115] *Id.* at 81.
[116] *Id.*
[117] *Id.* at 79 (quoting *Huffman v. Pursue, Ltd.*, 420 U.S. 592, 604 (1975)).
[118] 457 U.S. 423; *see Sprint*, 571 U.S. at 81.
[119] R. Doc. 22–2 at 12.

ruling such as disbarment or sanctions.[120]  It is not a coercive state enforcement action and is nearly identical in every way to an appeal of a civil declaratory judgment.[121]  The First Circuit proceeding is simply not akin to a criminal proceeding in the way that *Younger* requires.

To the extent the Board Members argue that the Union's pending lawsuit in the 19th Judicial District Court is a parallel state proceedings capable of triggering *Younger*, the Court's opinion does not change.  The civil suit pending in the 19th Judicial District Court is purely a civil lawsuit, and the Court cannot discern, nor have the Board Members offered, any characteristics of that litigation that would transform it into a civil enforcement suit akin to a criminal prosecution.  Nor do the proceedings relevant to the 2018 Advisory Opinion meet this standard.[122]  At oral argument, the Board Members argued that this proceeding has characteristics akin to a criminal prosecution because it culminated in an investigation which remains ongoing.  But "*Younger* does not apply merely because a state bureaucracy has initiated contact with a putative federal plaintiff or a state investigation has begun."[123]  Although the Fifth Circuit has declined to articulate a bright-line rule, it has held "that the issuance of a non-self-executing administrative subpoena does not,

---

[120] "*Younger* abstention ordinarily would not apply when a federal plaintiff also is the plaintiff in state court."  *Green v. City of Tuscan*, 255 F.3d 1086, 1098 (9th Cir. 2001) (quoting *Fresh Int'l Corp. v. Agric. Lab. Rels. Bd.*, 805 F.2d 1353, 1360 n.8 (9th Cir. 1986) (internal quotations omitted) and citing *Rogers v. Desiderio*, 58 F.3d 299, 301 (7th Cir. 1995), *Marks v. Stinson*, 19 F.3d 873, 885 (3d Cir. 1994), and *Crawley v. Hamilton Cnty. Comm'rs*, 744 F.2d 28, 30 (6th Cir. 1984)).
[121] *See Majors v. Engelbrecht*, 149 F.3d 709, 712 (7th Cir. 1998) ("For purposes of *Younger* abstention, administrative proceedings are 'judicial in nature' when they are coercive—i.e., state enforcement proceedings, as opposed to remedial, or legislative.") (internal citations omitted).
[122] Notably, while the subject matter of the 2018 declaratory opinion proceeding mirrors this one, it is an entirely separate proceeding, and the Board Members have offered no support for the proposition that the Court may consider it in a *Younger* analysis.
[123] *Google, Inc. v. Hood*, 822 F.3d 212, 223 (5th Cir. 2016).

without more, mandate *Younger* abstention."[124]  Requiring abstention "whenever enforcement is threatened . . . would leave a party's constitutional rights in limbo while an agency contemplates enforcement but does not undertake it."[125]  For this reason, the Fifth Circuit has suggested that "the period between the threat of enforcement and the onset of formal enforcement proceedings may be an appropriate time for a litigant to bring its First Amendment challenges in federal court.  Indeed, if this time is never appropriate, any opportunity for federal adjudication of federal rights will be lost."[126]

None of the state proceedings—be it the 2018 Advisory Opinion proceedings, the 19th Judicial District Court proceedings, or the 2024 Declaratory Opinion proceedings—have "progressed nearly as far as in the Supreme Court cases applying *Younger* to state agency proceedings in which the state had already 'investigated the allegations, made determinations that probable cause existed, and served formal charges.'"[127]  Accordingly, *Younger* abstention is not appropriate, and the Court denies the Board Members' Motion to the extent it seeks dismissal or a stay on this basis.

## ii.  *Pullman* Abstention Doctrine

The Board Members argue that even if the *Younger* abstention doctrine does not apply, this Court should abstain from exercising jurisdiction based on the

---

[124] *Id*. at 224.
[125] *Telco Commc'ns, Inc. v. Carbaugh*, 885 F.2d 1225, 1229 (4th Cir. 1989).
[126] *La. Debating & Literary Ass'n v. City of New Orleans*, 42 F.3d 1483, 1491 (5th Cir. 1995) (quoting *Telco*, 885 F.2d at 1229).
[127] *Id*. at 223 (quoting *La. Debating*, 42 F.3d at 1490–91).

*Pullman* abstention doctrine.[128]   The Board Members insist abstention is appropriate under *Pullman* because the Union's claim will force this Court to consider the constitutionality of Section 42:1111(E) and if the Court does so, the First Circuit case will be moot.

The Union maintains that abstention under *Pullman* would be inappropriate because the Union does not attack Section 42:1111(E) and argues only that the 2024 Declaratory Opinion is unconstitutional.[129]   The Union further argues that even if it does challenge the constitutionality of Section 42:1111(E), *Pullman* applies only to ambiguous statutes.[130]

*Pullman* applies to "cases presenting a federal constitutional issue which might be mooted or presented in a different posture by a state court determination of pertinent state law."[131]   The Fifth Circuit has articulated "two prerequisites for *Pullman* abstention."[132]   First, "there must be an unsettled issue of state law," and second, "there must be a possibility that the state law determination will moot or present in a different posture the federal constitutional question raised."[133]   "If these requirements are met, the court must then 'assess the totality of the circumstances

---

[128] R. Doc. 22-1 at 13-14.
[129] R. Doc. 25 at 17.
[130] *Id.* at 19–20.
[131] *Ibarra v. Bexar Cnty. Hosp. Dist.*, 624 F.2d 44, 46 (5th Cir. 1980) (internal quotations and citations omitted).
[132] *Id.* at 47.
[133] *Id.*

presented by a particular case, considering the rights at stake and the costs of delay pending state court adjudication.'"[134]  "Abstention is the exception, not the rule."[135]

The Board Members' invocation of *Pullman* fails at the first prong.  Notably, it is not clear that a decision on the merits of the Union's claim will constitute a decision on an unsettled issue of state law.  As the Union points out, the Board Members do not ask the Court to interpret Section 1111(E); they ask the Court only to assess the constitutionality of the 2024 Declaratory Opinion.  However, even if it is impossible to divorce the interpretation of Section 1111(E) from the statute itself, as the Board Members argue, abstention would not apply because the Board Members have failed to show that Section 1111(E) or the statute as interpreted by the Ethics Board in the 2024 Declaratory Opinion is ambiguous.[136]  It is well-settled that abstention "under *Pullman* turns on the existence of an *ambiguous* state law."[137]  The Board Members have not pointed to, and this Court does not independently find, any credible interpretation of the statute to support their abstention argument under *Pullman*.[138] "*Pullman* does not command district courts to abstain simply to permit state review of an unambiguous statute that has previously never been interpreted by a state

---

[134] *Sevin v. Par. of Jefferson*, 632 F.Supp.2d 586, 591 (E.D. La. 2008) (quoting *Baran v. Port of Beaumont Nav. Dist. of Jefferson Cnty., Tex.*, 57 F.3d 436, 442 (5th Cir. 1995)) (internal quotations omitted).
[135] *Nissan Motor Corp. in USA v. Harding*, 739 F.2d 1005, 1008 (5th Cir. 1984) (citing *Colo. River*, 424 U.S. at 813).
[136] *See Fedesna v. Can. Life Assurance Co.*, No. 21-CV-50884, 2022 WL 2981422, at *2 (5th Cir. July 27, 2022) ("Fedesna's alternative interpretation cannot carry his burden to show ambiguity.").
[137] *Baran*, 57 F.3d at 442 (emphasis added).
[138] *La. Debating*, 42 F.3d at 1492.

court."[139]  Thus, the Board Members have failed to meet their burden to show that *Pullman* abstention is appropriate.

Critically, even if the Board Members had met their burden under *Pullman*, the Court would exercise its discretion and decline to abstain.[140]  In assessing the totality of the circumstances, the Court finds that the rights at stake and the potential harm in delay while the state court litigation proceeds are too significant to justify abstention.  If the Union prevails on the merits of its claim, it will have asserted a fundamental First Amendment right.[141]  While infringement of a constitutional right for any amount of time is troubling, if the Union's right to associate has in fact been infringed, one could argue that the infringement of this right commenced as early as 2018 when the Ethics Board issued the 2018 Advisory Opinion.[142]  Considering the rights at stake and the amount of time the Union has suffered what it argues is an impermissible constitutional violation, abstention would not be appropriate even if the Court exercised its discretion to abstain under *Pullman*.  For these reasons, to the extent the Board Members' Motion seeks abstention based on *Pullman*, the Motion is denied.

---

[139] *Lipscomb v. Columbus Mun. Separate Sch. Dist.*, 145 F.3d 238, 243 (5th Cir. 1998) (citing *City of Hous. v. Hill*, 482 U.S. 451, 469 (1987)).

[140] *Id.* at ("We review a district court's decision to abstain for an abuse of discretion.").

[141] *See Red Bluff Drive-In, Inc. v. Vance*, 648 F.2d 1020, 1032 (5th Cir. 1981) ("[I]n view of the high cost of abstention in the context of suits seeking review of statutes exerting a purported chilling effect on First Amendment rights, . . . we cannot say that [the] district court abused its discretion in declining to invoke *Pullman* abstention.").

[142] *See Harris Cnty. Comm'rs Court v. Moore*, 420 U.S. 77, 84 (1975) (citations omitted) ("[W]here the litigation has already been long delayed . . . the Court has held that abstention should not be required.").

## C. Whether the Union Has Stated a First Amendment Claim

The Board Members' final argument in support of dismissal is that the Union's sole claim, which alleges that "in issuing and enforcing the March 8, 2024 declaratory opinion, the Board Members have abridged and denied the Union's First Amendment rights to pay for legal representation for its members," fails to state a claim for relief.[143] The thrust of the Board Members' argument is that even if the Union has a First Amendment right to pay for its members' legal representation before the Civil Service Board, the State's interest in ensuring high standards of legal ethics and preventing conflicts of interest outweighs the Union's right.[144]

The Union's argument against Rule 12(b)(6) dismissal is two-fold. The Union first argues that the Board Members' Motion is procedurally improper because the Board Members "do not identify any deficiencies with the factual allegations in Plaintiff's Complaint."[145] The Union further argues that even if the Motion is procedurally proper, it should be denied because the Supreme Court has definitively held that a State's interest in regulating ethical conduct does not justify infringement of a union.[146]

### i.    Whether the Board Members' Merits-Based Attack Is Procedurally Proper

Before turning to turning to this question, the Court considers whether the Board Members' Motion to Dismiss is procedurally proper. Faced with a Rule 12(b)(6)

---

[143] R. Doc. 1 at ¶ 59. The Union raises a claim for "Injunctive Relief" in Count II. *Id.* at ¶ 61. As the Board Members point out, however, injunctive relief cannot serve as an independent claim.
[144] R. Doc. 22-1 at 18-20.
[145] R. Doc. 25 at 21 (internal citation omitted).
[146] *Id.* at 24.

motion, a court must "determine whether the plaintiff has stated a legally cognizable claim that is plausible."[147]   "And "no matter the factual content, a claim is not plausible if it rests on a legal theory that is not cognizable."[148]   Here, the Board Members seek dismissal of the Union's claim on the basis that the Union has failed to state a cognizable First Amendment claim.  Specifically, the Board Members argue that the alleged abridgement of the Union's First Amendment rights is warranted by a compelling government interest.  This is a legitimate basis for a Rule 12(b)(6) motion.  Accordingly, the Court will consider the merits of the Board Members' Rule 12(b)(6) Motion.

### ii.    Matters Considered for Purposes of the 12(b)(6) Analysis

As stated earlier, in deciding a Rule 12(b)(6) motion to dismiss, a court is generally prohibited from considering information outside the pleadings but may consider documents outside of the complaint when they are: (1) attached to the motion; (2) referenced in the complaint; and (3) central to the plaintiff's claims.[149]  A court can also consider matters of public record and matters subject to judicial notice.[150] The Court has restricted its Rule 12(b)(6) analysis to the Complaint and the law.

---

[147] *Shandon*, 607 F.3d at 1032 (citing *Iqbal*, 556 U.S. at 662).
[148] *Id.*
[149] *Maloney*, 456 F. App'x at 340–41.
[150] *Servicios Azucareros de Venez., C.A. v. John Deere Thibodaux, Inc.*, No. 10–CV–4443, 2013 WL 1513406, at *3 (E.D. La. Apr. 11, 2013).

### iii.    Whether the Union Has Stated a Claim for Relief

The Board Members argue that this matter should be dismissed because the Union has failed to state a viable First Amendment claim.[151]  "The First Amendment prohibits government from 'abridging the freedom of speech, or of the press; or the right of the people peacefully to assemble, and to petition the Government for a redress of grievances.'"[152]   Although not explicit in the First Amendment, the Supreme Court "has 'long understood as implicit in the right to engage in activities protected by the First Amendment a corresponding right to associate with others.'"[153] The Supreme Court has held that together, the First and Fourteenth Amendments give unions the right to hire attorneys on a salary basis to assist their members in the assertion of their legal rights.[154]

Constitutional rights are not absolute.  Infringement of a First Amendment right to associate is permissible if it passes exacting scrutiny.  That is, if it "serve[s] a 'compelling state interes[t] . . . that cannot be achieved through means significantly less restrictive of associational freedoms.'"[155]   "Though possibly less rigorous than strict scrutiny, exacting scrutiny is more than a rubber stamp."[156]   "The strength of the governmental interest must reflect the seriousness of the actual burden on First Amendment rights."[157]  Thus, in analyzing a freedom of association claim, the court

---

[151] R. Doc. 22-1 at 14–20.

[152] *Ams. for Prosperity Found. v. Bonta*, 594 U.S. 595, 605–06 (2021).

[153] *Id.* (quoting *Roberts v. U.S. Jaycees*, 468 U.S. 609, 622 (1984)).

[154] *See United Mine Workers of Am., Dist. 12 v. Ill. State Bar Ass'n*, 389 U.S. 217, 221–22 (1967).

[155] *Roberts*, 468 U.S. at 618.

[156] *Minn. Citizens Concerned for Life, Inc. v. Swanson*, 692 F.3d 864, 876 (8th Cir. 2012) (internal citations omitted).

[157] *Id.* (quoting *John Doe No. 1 v. Reed*, 561 U.S. 186, 196 (2010)) (internal quotations and brackets omitted).

"must ask whether the challenged governmental conduct infringes the right to freedom of association at all, and if it does, whether that infringement can survive exacting scrutiny."[158]

The Court begins with the Union's claim that the Opinion violates its right to pay for its members' legal representation. A line of Supreme Court cases, beginning with *NAACP v. Button*, instructs the Court's decision.[159] In *Button*, the Supreme Court considered a Virginia state law prohibiting "the improper solicitation of any legal or professional business."[160] According to the State, this law, which effectively outlawed the NAACP's system of advising prospective litigants to seek legal advice and often paying for the representation, served to discourage baseless litigation and avoid conflicts of interest between the NAACP and the individual litigants. After finding that the NAACP's activities were modes of expression and association protected by the First and Fourteenth Amendments, the Court found that the State had failed to justify this abridgement. The Court explained first that the law was overly broad because it "proscrib[ed] any arrangement by which prospective litigants are advised to seek the assistance of particular attorneys."[161] It then explained that the "dangers of baseless litigation and conflicting interests between the NAACP and individual litigants [were] far too speculative to justify the broad remedy invoked by the State."[162]

---

[158] *Crowe v. Or. State Bar*, 112 F.4th 1218, 1233 (9th Cir. 2024).
[159] 371 U.S. 415 (1963).
[160] *Id.*
[161] *Id.* at 444.
[162] *United Mine*, 389 U.S. at 222–233 (discussing *Button*, 371 U.S. 415).

The Supreme Court expanded *Button* to labor unions in *Brotherhood of Railroad Trainmen v. Virginia*.[163]  The *Trainmen* Court considered a Virginia law which, as applied, barred unions from recommending lawyers to its members for workers' compensation suits.[164]  The Court found that the union members had a constitutional right to aid each other in obtaining counsel.[165]  While noting that there was a risk that an attorney could sacrifice the interests of his client if his client's interests ever diverged from those of the union, the Court ultimately ruled that "this very distant possibility of harm could not justify a complete prohibition of the Trainmen's efforts to aid one another in assuring that each injured member would be justly compensated for his injuries."[166]

These decisions ultimately led to *United Mine Workers of America, District 12 v. Illinois State Bar Association*.[167]  In that case, the Supreme Court considered an Illinois Bar Association regulation prohibiting the unauthorized practice of law, which, as applied, barred a mining union's ability to pay a salaried attorney to represent mine workers and their widows in pursuing workers' compensation claims. After finding that the union was participating in constitutionally protected activities, the Supreme Court considered whether the Bar's justification for abridging the union's rights—its "broad interest" in regulating the practice of law—survived exacting scrutiny.[168]  Relying on its prior decisions in *Button* and *Trainmen*, the Court

---

[163] 377 U.S. 1 (1964).
[164] *Id.*
[165] *Id.* at 6.
[166] *United Mine*, 389 U.S. at 223 (discussing *Trainmen*, 377 U.S. 1).
[167] *Id.*
[168] *Id.* at 222.

found that the subject regulation was "not needed to protect the State's interest in high standards of legal ethics," in part because "[i]n the many years the program has been in operation, there has come to light, so far as we are aware, not one single instance of abuse, of harm to clients, of any actual disadvantage to the public or to the profession, resulting from the mere fact of the financial connection between the Union and the attorney who represents its members."[169]

"The common thread running through" these cases "is that collective activity undertaken to obtain meaningful access to the courts is a fundamental right within the protection of the First Amendment."[170]  The Board Members do not dispute, and the Court agrees, that the Union has a constitutional right to provide legal representation to its members for Ethics Board proceedings.[171]  Instead, the sole disagreement between the parties is whether a compelling state interest justifies the abridgment of this right.  To show that there is, the Board Members argue that the 2024 Declaratory Opinion serves to maintain ethical governmental operations by avoiding actual conflicts of interest, as well as the appearance of impropriety.[172]  Indeed, the Supreme Court has recognized that there is a "'vital state interest' in safeguarding 'public confidence in the fairness and integrity of the nation's elected

---

[169] *Id.* at 225.
[170] *United Transp. Union v. State Bar of Mich.*, 401 U.S. 576, 585 (1971); *see Lawline v. Am. Bar Ass'n*, 956 F.2d 1378, 1387 (7th Cir. 1992) ("[*Mine Workers*] supports the proposition that laypersons have a right to obtain meaningful access to courts, and to enter into associations with lawyers to effectuate that end.").
[171] Indeed, proceedings before the Ethics Board share many characteristics of traditional civil litigation.  *See* La. R.S. §§ 1141(B)(1)(a),
[172] R. Doc. 22–1 at 18.

judges.'"[173]  It flows that a state would have a similar interest in protecting public confidence in the fairness and integrity of Ethics Board members who, for the reasons above, sit as judges of sorts for Ethics Board proceedings.

But the harm that the 2024 Declaratory Opinion hopes to avoid, however legitimate, is not compelling enough to justify the infringement of the Union's constitutional right at issue.  The decisions in *Button*, *Trainmen*, and *United Mine* rest, at least in part, on the idea that a theoretical or tangential harm is insufficient to support a compelling state interest.  Indeed, the Supreme Court explained that in *Trainmen* and *United Workers*, "there was absolutely no indication that the theoretically imaginable divergence between the interests of union and member ever actually arose in the context of a particular lawsuit."[174]  Here, the Board Members do not point to anything to show that any Ethics Board member who concurrently serves or served as a member of a union representing individuals appearing before the Ethics Board has been swayed by his or her concurrent roles.[175]  Nor do the Board Members point to anything showing that public confidence in the Ethics Board's proceedings or decisions has dwindled.[176]  There is simply "no indication that the theoretically imaginable divergence between the interests of [the Union] and [the Ethics Board] ever actually arose."[177]

---

[173] *Williams-Yulee v. Fla. Bar*, 575 U.S. 433, 445 (2015) (quoting *Caperton v. A.T. Massey Coal Co.*, 556 U.S. 868, 889 (2009)).

[174] *United Mine*, 389 U.S. at 224 (discussing *Trainmen*, 377 U.S. at 1).

[175] The Union offers an affidavit which it argues shows that no conflict exists.  The Court does not consider this affidavit, however, as doing so would be improper under a Rule 12(b)(6) motion to dismiss.

[176] *See In re Primus*, 436 U.S. 412, 434–35 (1978) ("The record does not support appellee's contention that undue influence overreaching, misrepresentation, or invasion of privacy actually occurred in this case.").

[177] *United Mine*, 389 U.S. at 224 (discussing *Trainmen*, 377 U.S. at 1).

Instead, the cited harms in this case are "far too speculative" to pass constitutional muster.[178]  The theory that an officer of the Union would be swayed—or that the public would assume he or she could be swayed—to act favorably towards a litigant appearing before the Civil Service Board merely because that member was represented by an attorney paid for by the Union presupposes a number of things.  It assumes, for example, that the legal representation provided by the Union is such an overwhelming advantage of Union membership that the outcome of these proceedings would persuade or dissuade membership.  It further assumes that even if membership was affected by Civil Service Board proceeding outcomes, it would be to such a degree that it could affect the salary of Union officers to the extent that the Union officer could be biased in the Civil Service Board proceedings.[179]

Nor is the 2024 Declaratory Opinion narrowly tailored like the Board Members argue.  Admittedly, the 2024 Declaratory Opinion does not prohibit the Union from paying for its members' representation under all circumstances.  The Union may permissibly pay for representation, for example, when a non-officer member or no member at all sits on the Civil Service Board.  However, when it is an officer of the Union who sits on the Civil Service Board, the 2024 Declaratory Opinion amounts to a total ban on the Union's ability to pay for its members' representation before the Civil Service Board.  It is unclear why concerns about a potential conflict of interest

---

[178] *Id.* at 223.
[179] The Union alleges that the Ethics Board determined that the Union does not have a substantial economic interest in an employee's disciplinary matter before the Civil Service Board.  R. Doc. 1 at ¶ 31.  It follows that a salaried officer of the Civil Service Board would also have no substantial economic interest in such matters.  Thus, it is questionable how an actual conflict of interest or the appearance of such a conflict could exist.

could not be ameliorated by less restrictive means, for example, by a recusal requirement or some other system to ensure that the Union officer does not participate in proceedings involving this hypothetical and attenuated conflict. For these reasons, the Court rejects the Board Members' position that the Union has failed to state a claim for relief based on its failure to allege a constitutional violation. Accordingly, the Board Members' Motion to Dismiss on this basis is denied.

### D. Whether the Union Is Entitled to a Preliminary Injunction

Having determined that it is not appropriate to dismiss this action in its entirety, the Court turns to the merits of the Union's Motion for Preliminary Injunction. The Union argues that it is entitled to a preliminary injunction because, for the reasons discussed in its briefing as to the Motion to Dismiss, there is a substantial likelihood that it will succeed on the merits of its claim.[180] The Union further argues that the infringement of its constitutional rights constitutes irreparable harm and that the Board Members cannot point to any harm that they would suffer from an injunction of the 2024 Declaratory Opinion.[181] Finally, the Union insists that an injunction would not disserve the public's interest because the public would not be served by allowing an unconstitutional law to take effect.[182]

The Board Members counter that for the reasons they outlined in support of their Motion to Dismiss, the Union is not likely to succeed on its claim.[183] The Board Members further argue that "[a]s there is no impermissible constitutional violation,

---

[180] R. Doc. 4-1 at 12–16.
[181] *Id.* at 16–19.
[182] *Id.* at 19.
[183] R. Doc. 23 at 20.

there is no irreparable harm."[184]  Finally, the Board Members argue that the public's interest is best served by upholding Louisiana's ethics code and allowing the State to enforce its laws.[185]  These interests, the Board Members argue, "far outweigh[] [the Union's] desire to reinstate the unethical financial relationship between the union official and the Civil Service Board."[186]

### i.    Whether the Union Has Shown a Likelihood of Success on the Merits of Its First Amendment Claim

The threshold question is whether the Union has shown a substantial likelihood of success on the merits of its claim.  To meet this burden, a plaintiff need not show that it is certain it will succeed.[187]  "To assess the likelihood of success on the merits, we look to 'standards provided by substantive law.'"[188]  With this standard in mind, the Court adopts its analysis from Section C(ii) of this Order and Reasons, in which it considered whether the Union failed to state a claim for relief.  While the Court is cognizant that Rule 12(b)(6) motions to dismiss and motions for preliminary injunctions are analyzed under different legal standards, the Court is confident that its earlier analysis satisfies the preliminary injunction standard.  In its analysis, the Court determined that the Union's proffered right—paying for legal representation for its members appearing before the Civil Service Board—fell within its First Amendment right to associate.  The Court went on to find that the Board Members' justification for abridging this right did not meet the exacting scrutiny standard

---

[184] *Id.*
[185] *Id.* at 21.
[186] *Id.*
[187] *See Janvey*, 647 F.3d at 595–96 (quoting *Byrum v. Landreth*, 566 F.3d 442, 446 (5th Cir. 2009)).
[188] *Id.* (quoting *Roho, Inc. v. Marquis*, 902 F.2d 356, 358 (5th Cir. 1990)).

necessary to justify the infringement of its First Amendment right.  For these reasons, and for all other reasons outlined in Section C(ii), the Court finds that the Union has shown a substantial likelihood of success on the merits of its First Amendment claim.

i.    **Whether the Union Has Shown that It Will Suffer Irreparable Harm Absent an Injunction**

The second preliminary injunction prong asks whether the Union will suffer an irreparable injury absent an injunction.  This question is easily resolved following the Court's finding as to the Union's likelihood of success on the merits.  It has long been recognized that "[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury."[189]  The Court has found that the Union is likely to succeed on the merits of its First Amendment claim, and therefore, the Union's continued prohibition against funding its members' legal representation at Civil Service Board proceedings are and will continue to irreparably harm the Union.

ii.    **Whether the Balances of Equities and Public Interest Weigh In Favor of Injunctive Relief**

The final two factors, which merge when the Government is the party opposing the preliminary injunction, also weigh in favor of injunctive relief.[190]  The Court finds that the Union would be harmed if it was unable to help its members secure legal

---

[189] *Opulent Life Church v. City of Holly Springs, Miss.*, 697 F.3d 279, 295 (2012) (quoting *Elrod*, 427 U.S. at 373) (internal quotations omitted).
[190] *Nken*, 556 U.S. at 435; *see also Comput. & Commc'ns Indus. Ass'n v. Paxton*, 747 F.Supp.3d 1011 (W.D. Tex. 2024) (applying this well-known principle against a state official being sued in his official capacity based on the *Ex parte Young* exception to Eleventh Amendment immunity).

representation and barred from exercising its First Amendment rights. And while the risk of a potential conflict of interest is admittedly nonzero, less extreme mechanisms, such as a recusal system, likely exist to mitigate any conflict of interest or perceived conflict. The Court recognizes the public's interest in upholding Louisiana's Ethics Code and allowing the State to enforce its laws. On balance, any harm to the Board Members in granting injunctive relief is further undercut because "[i]njunctions protecting First Amendment freedoms are always in the public interest," and the "government's interest is the public interest."[191] The final two factors, like the others, therefore weigh in favor of injunctive relief. For these reasons, the Court finds that the Union has carried its burden to show that it is entitled to a preliminary injunction.

## IV. CONCLUSION

For the foregoing reasons, **IT IS ORDERED** that Defendants' Motion to Dismiss and Motion to Stay Under *Pullman*[192] is **GRANTED IN PART** and **DENIED IN PART**. Defendants' Motion is **GRANTED** to the extent it seeks dismissal of the Union's claim against the Louisiana Ethics Board. The Motion is **DENIED** in all other respects.

**IT IS FURTHER ORDERED** that the Union's claim against the Louisiana Ethics Board are **DISMISSED without prejudice**.

---

[191] *Opulent Life Church*, 697 F.3d at 298; *Pursuing Am.'s Greatness v. Fed. Election Comm'n*, 831 F.3d 500, 511 (D. D.C. 2016) (citing *Nken*, 556 U.S. at 435).
[192] R. Doc. 22.

**IT IS FURTHER ORDERED** that the Union's Motion for Preliminary Injunction[193] is **GRANTED**.

**IT IS FURTHER ORDERED** that the Board Members are **PRELIMINARILY ENJOINED** from enforcing its March 8, 2024 declaratory opinion as applied to the Union.

**IT IS FURTHER ORDERED** that the Union shall not be required to post any security or bond in connection with the issuance of this Order and Reasons.

New Orleans, Louisiana, April 14, 2025.

**WENDY B. VITTER**
**United States District Judge**

---

[193] R. Doc. 4.